Feb. 26. 2019 1:17PM                                                                    No. 0492   P. 4

CJ-19-568
Prince



## IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| 1. JUSTIN CURRY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. **CJ-2019-568** |
| 1. UNIVERSITY OF CENTRAL OKLAHOMA, and | ) Jury Trial Demanded ) ) |
| 2. NICKOLAS BOBECK, in his official capacity, | ) FILED IN DISTRICT COURT ) OKLAHOMA COUNTY ) ) JAN 31 2019 |
| Defendants. | ) RICK WARREN ) COURT CLERK |

### PETITION

Plaintiff, Justin Curry, by and through his counsel, Melvin C. Hall, Damario Solomon-Simmons and Kymberli J. M. Heckenkemper of Riggs, Abney, Neal, Turpen, Orbison & Lewis, P.C., brings this action arising out of the wrongful cancellation or nonrenewal of his football scholarship against the named Defendants, and, in support of the same, alleges as follows:

### JURISDICTION & VENUE

1. Plaintiff Justin Curry is an adult and student at the University of Central Oklahoma, and resides in Edmond, Oklahoma.

2. Defendant University of Central Oklahoma ("UCO") is a public university. Its principal place of business is in Edmond, Oklahoma.

3. Nickolas Bobeck, an individual, is head coach of the football team at UCO, and, upon information and belief, he is a resident of Edmond, Oklahoma.

4. All parties reside in this judicial district.

5. This Court has jurisdiction over this action.

1

Exhibit 2

6. Venue is proper in this judicial district.

## STATEMENT OF THE CASE

Universities and their staffs should not prevent student-athletes from completing their college degree programs just because their athletic production did not meet expectations. Apparently, University of Central Oklahoma and their Head Football Coach, Nickolas Bobeck, believe otherwise. They have violated multiple Civil Rights laws and NCAA rules to revoke 21-year-old Justin Curry's scholarship and effectively end his collegiate career. Fortunately, the constitutions of the State of Oklahoma and the United States do not allow such repugnant behavior to occur unchecked.

## FACTUAL BACKGROUND

7. Plaintiff incorporates paragraphs 1-6 as if fully re-stated herein.

8. Plaintiff Justin Curry showed early promise as a young football player. In high school, he was named All-State and All-Region as both a sophomore and a senior. He was named Player of the Week after rushing for 130 yards and three touchdowns against the top-ranked team in the state. As a sophomore, he rushed for 1,200 yards and thirteen touchdowns, and caught three touchdown passes. As a senior, he rushed for 970 yards, eighteen touchdowns, and had 300 yards and two touchdowns receiving.

9. Plaintiff began his college football career at Samford University in Birmingham, Alabama, but transferred to UCO in the Spring semester of 2018 to play as a UCO Broncho on an athletic scholarship.

10. During the Spring 2018 semester, Plaintiff initially had a difficult time adjusting to his new school. While he did not get into any serious trouble, he skipped a class, missed a few grade- and tutoring checks, and failed an online class. He was never put on academic probation or formally

2

Exhibit 2

punished by the University, but he did receive a "Broncho REMINDER"[1] for each of these missteps, and he suffered a reduction in his Spring 2018 scholarship.

11. During the Summer of 2018, Plaintiff worked diligently to show his new team and coaches that he could be trusted as a team player on and off the field. He made up for the class he had failed by taking summer classes online and at the local community college, and he went to the football facilities to exercise and train nearly every day. He had no disciplinary issues nor conflicts with anyone, passed his summer classes, and he was one of the first player to arrive to exercise and train and one of the last players to leave every day.

12. Plaintiff's hard work during the Summer of 2018 did not go unrecognized. In early September of 2018, he once again received a non-resident scholarship for the Fall 2018 and Spring 2019 semesters.

13. As a result of injuries to other players in front of Plaintiff on the running-back depth chart, he became the starter for the Bronchos' first game.

14. During the Broncho's second game, against University of Nebraska—Kearney ("Kearney"), Plaintiff fumbled the football and was taken out of the game after only a few plays. Coach Bobeck called Plaintiff a "soft bitch," and did not put Plaintiff on the field to play on offense for nearly five straight weeks.

15. In early October of 2018, between UCO's games against Central Missouri and Missouri Western, Coach Bobeck approached Plaintiff and told him that he had made a mistake by signing too many out-of-state players (who require more scholarship money) and that because of that, the team was experiencing money problems. He told Plaintiff that because he was an out-of-state player, he needed him to "step up," and that the team "need[ed] more" from him on the field.

---

[1] A Broncho REMINDER is a series of physical exercises that is used as a punitive measure.

3

**Exhibit 2**

16. On December 6, 2018, Plaintiff attended a post-season meeting with Coach Bobeck, expecting to receive his end-of-year evaluation. However, instead, Coach Bobeck informed him that he no longer be receiving his scholarship. Coach Bobeck indicated to him that, as he had told him before, the team was experiencing money issues, and that they had needed more from him on the field. He related to Plaintiff that he believed Plaintiff had not produced enough on the field to justify the amount they were paying for his scholarship as an out-of-state player.

17. Immediately after the meeting, Plaintiff called his father, Felix Curry, to inform him of the news he had just received. Plaintiff's father called Coach Bobeck to complain. When Coach Bobeck again indicated his reasoning—that Plaintiff simply did not produce enough on the field— Plaintiff's father responded that in order for Plaintiff to be able to produce on the field, he needed to be given the opportunity to handle the ball. The two men argued about Plaintiff's perceived lack of production, and only after that did Coach Bobeck assert what he has now given as his formally stated reasoning for the cancellation of Plaintiff's scholarship: violations of team rules.

18. On December 7, 2018, Jeremy Rogers, UCO Director of Athletic Compliance, sent an email to Plaintiff containing an attached letter of release and written permission to contact other institutions about transferring to play football.

19. On December 10, 2018, in the midst of final exams, Plaintiff responded to Mr. Rogers' email, indicating he had no desire to be released from the team to pursue other opportunities and that he would be focused solely on academics, improving as a UCO student-athlete, and spending time with family over the holidays.

20. On December 13, 2018, James Powers, Director of UCO Student Financial Services, sent a formal email notification to Plaintiff indicating that his "athletic scholarship is *not being renewed for the Fall academic semester*." The email contained a statement of several NCAA and UCO policies

Exhibit 2

regarding athletics-aid appeals, but it did not include a copy of UCO's policies and procedures for conducting the hearing related to such an appeal.

21. On December 16, 2018, Darnell Smith, UCO Assistant Athletics Director sent an email to Plaintiff, noting that he "should have received a letter from financial aid indicating your scholarship will be cancelled at the end of the fall, 2018 term." The email did not contain UCO's policies for appealing the decision or the policies and procedures for conducting the appeal hearing.

22. Plaintiff never received a letter like the one Mr. Smith stated he should have received. The only subsequent notification Plaintiff received was a December 17, 2018 email from James Powers noting the *nonrenewal* of his scholarship would take effect in the Spring 2019 semester. The letter did not indicate the scholarship was being cancelled.

23. The distinction between cancellation and nonrenewal is significant because NCAA rules and regulations treat them differently.

24. Plaintiff appealed the cancellation or nonrenewal of his scholarship on December 18, 2018, in accordance with the rights provided by the NCAA Bylaws and the UCO Student-Athlete Handbook.

25. Plaintiff, through his counsel, as early as January 4, 2019, requested from UCO "any and all documentation of the specific basis or reasoning for the decision not to renew Mr. Curry's scholarship."

26. Twenty days later, Plaintiff's counsel received from Mr. Rogers an emailed folder containing, among other things, a December 20, 2018 email from Coach Bobeck to Abigail Okoe, UCO Assistant Director of Federal Work-Study & Scholarships, laying out the reasons for the cancellation of Plaintiff's scholarship.

**Exhibit 2**

27. The email from Coach Bobeck, which was authored over a month before it was provided to Plaintiff, stated that the cancellation was due to "multiple violations of team policy," including:

1. Multiple missed and failed classes throughout his time at UCO
2. Academic dishonesty about breaking his foot so he could make up a test
3. Failure to turn in completed grade checks
4. Multiple study hall absences
5. Vaping in the locker room

28. The folder emailed to Plaintiffs' counsel on January 24, 2019—only a week prior to the hearing scheduled for Plaintiff's appeal—also contained an outline of UCO's Athletic Aid Appeals Process. This was the first time Plaintiff was provided much of this information.

### FIRST CLAIM FOR RELIEF:

### Deprivation of Property Interest Without Due Process of Law
### In Violation of the Fourteenth Amendment
### As to all Defendants
### 42 U.S.C. § 1983

29. Plaintiff incorporates by reference paragraphs 1-28 as if fully re-stated herein.

30. Plaintiff has a constitutionally protected property interest in his continued receipt of scholarship funds at UCO, because he has a legitimate claim of entitlement to it as a result of policies, course of conduct, practices and understanding established by UCO, and the express and implied contractual relationship between UCO and Plaintiff, which arose from a Financial Aid Agreement, signed by both parties.

31. It is well established that Fourteenth Amendment due process protections are required in higher education disciplinary proceedings.

32. Thus, a person who has been admitted to a university, and who has paid tuition to that university, has a protected property interest in continuing his education at that university until he has completed his course of study. The state cannot deprive a person of this interest without due process.

6

**Exhibit 2**

33. As a result, if Plaintiff, as a UCO student, faced disciplinary action that included the revocation of his scholarship, which represents the only means by which Plaintiff can financially afford to attend UCO, then the due process provisions of the Fourteenth Amendment to the United States Constitution and the Oklahoma State Constitution protect him from arbitrary deprivation of that scholarship.

34. UCO, as a public university, has an absolute duty to provide its students equal protection and due process of law by and through any and all policies and procedures set forth by the University.

35. Plaintiff has matriculated, made progress toward his degree, and is expected to graduate from UCO in the Summer of 2019, but he will not be able to complete his degree plan if his scholarship is revoked.

36. Under both federal and state law, Plaintiff has a constitutionally protected property interest in continuing his education at UCO.

37. Plaintiff is entitled to fundamentally fair procedures to determine whether he engaged in the conduct in which he is alleged to have engaged, and to ascertain whether such alleged conduct warrants revoking his scholarship and ending his education at UCO.

38. The currently scheduled appeal "hearing" is a sham, and, if held in the manner prescribed by OCU procedure, it will flagrantly violate Plaintiff's clearly established rights under the federal and state of Oklahoma due process laws.

39. Plaintiff is entitled to process commensurate with the seriousness the discipline (loss of scholarship and resulting effective dismissal) he is facing. Further, the false and defamatory allegations of academic dishonesty lodged by Coach Bobeck could have life-long implications.

**Exhibit 2**

40.   If the charges of academic dishonesty are upheld during the sham due process hearing, Plaintiff's education and career prospects will be severely diminished, as with a charge like that on his academic record, he will be unable to gain admission to a comparable university and pursue his lifelong goal of becoming a college graduate.

41.   UCO commits itself to following the rules and regulations set forth by the National Collegiate Athletics Association ("NCAA"). In its Student-Athlete Handbook, UCO notes:

> UCO is charged with knowing and following the rules and regulations set forth by the National Collegiate Athletic Association (NCAA). Specifically, the NCAA Constitution provides that each institution shall be responsible for:
> ... Ensuring that members of the institution's staff, student-athletes, and other individuals or groups representing the institution's athletics interests comply with all applicable NCAA rules, including basic athletic issues relating to ... financial aid ....

42.   NCAA Bylaws restrict the reduction or cancellation of athletic aid during the academic term for which it was awarded. NCAA Bylaw 15.5.4.3 is explicit in emphasizing that "[a]thletics aid may not be decreased or canceled during the period of its award ... [o]n the basis of a student's athletics ability, performance or contribution to a team's success[.]" However, NCAA Bylaw 15.5.4.1.1 states that "[a]n athletics agreement may include nonathletically related conditions (e.g., compliance with academic policies or standards, compliance with team rule or policies) by which the aid may be reduced or cancelled during the period of the award."

43.   NCAA Bylaw 15.5.5.1 requires notification of non-renewals of athletic aid be made to student-athletes by the institution's regular financial aid authority "promptly" after the decision whether to renew or not to renew is made, which must be on or before July 1st before the "ensuing academic year."

44.   The Agreement of Financial Aid, signed by Plaintiff in September of 2018, states in pertinent part, under "Conditions of Athletic Financial Aid:"

**Exhibit 2**

The amount of this aid may be reduced or canceled during the period of the award and charges may be applied to my bursar account, if: . . . I violate conditions or clauses within: the UCO Student Code of Conduct, the UCO Athletic Department Code of Honor, team rules established and communicated by my sport's head coach or fail to meet compliance with academic policies or standards at UCO.

45. No conditions or clauses from the UCO Student Code of Conduct, the UCO Athletic Department Code of Honor, team rules, or academic policies or standards are *included within* the Agreement of Financial Aid.

46. UCO's Code of Student Conduct ("Student Code") explicitly says that "Attendance at the University of Central Oklahoma is not compulsory." UCO Stud. Code Conduct 8 (2018-19).

47. The Student Code does not require students to submit grade checks or to attend study hall, nor does it prohibit missing or failing classes.

48. UCO's Player Policy Booklet for football players ("Football Policies"), under "Football Academic Guidelines," with respect to attendance, states "Class attendance is expected as a course of life just the same as with the practice and playing field. Failure to attend classes will meet with appropriate action from the head coach." Football Policies, p. 10. The policy does not state how many classes a player must fail to attend before such failure will be met with action, nor does it state what "appropriate" action is.

49. The Football Policies similarly do not expressly require *players* to *submit* grade checks. Rather, the booklet states, "Timely grade checks will be made with instructors throughout the semester; however, these checks are not the only source of information that will be gathered regarding players' progress." Football Policies, p. 10.

50. The Football Policies also do not prohibit players from failing classes: "Failing grades are not expected in any course. If you have given your absolute best effort and still fail, you will need

Exhibit 2

to re-assess your objectives for your education." The booklet provides no indication that failing classes will be met with any disciplinary action.

50. The Football Policies do state that "Study Hall is required for all players no matter their GPA," and they note that players who do not "log the appropriate amount of time" will be disciplined. However, they do not state how much time is "appropriate," and they do not require that players arrive on-time to study hall.

51. The appeals process is a sham, sure to result in the cancellation of Plaintiff's scholarship.

52. Plaintiff has not been informed who bears the burden of proof, what the standard of proof is, or what the appeals committee considers in making its decision.

53. Pursuant to the athletics-aid appeals procedure:

    a. The appeal hearing is split into two separate meetings—one meeting with the student-athlete, and another with the aid-cancelling authority (in this case, the athletics department)—such that Plaintiff is not even given the opportunity to hear the statements made by Coach Bobeck and the athletics department.

    b. Plaintiff has the first opportunity to speak to the appeals panel, such that he cannot respond to statements made by Coach Bobeck and the athletics department.

    c. Plaintiff is entitled to have only one "advisor" present, which may be an attorney, but the advisor is prohibited from advocating on Plaintiff's behalf during the meeting.

    d. Plaintiff has no opportunity to confront or cross-examine witnesses

Exhibit 2

against him.

e. Plaintiff has no opportunity to present evidence or witnesses of his own.

f. Plaintiff has no opportunity to explain evidence offered against him.

54. The appeals committee has already had communications with Coach Bobeck about the reasoning for Plaintiff's scholarship cancellation and has already seen Coach Bobeck's and the athletic department's evidence against Plaintiff—several days prior to the hearing.

55. Coach Bobeck lied to Abigail Okoe, a member of the financial aid appeals committee, in the course of explaining the rationale for Plaintiff's scholarship cancellation or nonrenewal, by stating Plaintiff engaged in academic dishonesty—an accusation which is demonstrably false.

56. Revocation of Mr. Curry's scholarship pursuant to the procedure prescribed by UCO and under these circumstances will deprive Mr. Curry of his constitutionally protected property interest in continued receipt of scholarship funds and continued enrollment at UCO without adequate notice of opposing claims, and without a reasonable opportunity to prepare and meet them in an orderly hearing adapted to the nature of the case, and by a tainted tribunal.

57. Revocation of Mr. Curry's scholarship pursuant to the procedure prescribed by UCO and under these circumstances will deprive Mr. Curry of a constitutionally protected property interest without an opportunity be heard at a meaningful time and in a meaningful manner.

58. Revocation of Mr. Curry's scholarship pursuant to the procedure prescribed by UCO and in light of the totality of the circumstances will deprive Mr. Curry of fundamental fairness.

**SECOND CLAIM FOR RELIEF**
**Deprivation of Property Interest Without Due Process of Law**
**in Violation of the Article Two of the Oklahoma State Constitution**
As to all Defendants
OKLA. CONST. ART. 2 § 7

11

**Exhibit 2**

59. Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein.

### THIRD CLAIM FOR RELIEF
### Deprivation of Liberty Interest without Due Process of Law in Violation of the Fourth Amendment
### As to All Defendants
### 42 U.S.C. § 1983

60. Plaintiff adopts and incorporates by reference the preceding paragraphs as if fully set forth herein

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Justin Curry, by and through his undersigned counsel, respectfully requests this court enter judgment in his favor and as follows:

A. Award Plaintiff monetary damages for injuries incurred as a result of Defendants' violations of his constitutional rights in an amount to be determined at trial;

B. Award to Plaintiff punitive damages for Defendants' wanton violations of Plaintiff's constitutional rights;

C. Enjoin Defendants from revoking Plaintiff's scholarship;

D. Enjoin Defendants to remove or cause to be removed from Plaintiff's academic record any indication of his wrongful scholarship cancellation or nonrenewal;

E. Enjoin Defendants from taking any adverse action against Plaintiff in retaliation for vindicating his constitutional rights;

F. Award Plaintiff his litigation costs, including a reasonable attorney's fee, incurred in bringing this action; and

G. Award such other and further relief as this Court may deem proper and just under the circumstances.

**Exhibit 2**

**Exhibit 2**

Respectfully submitted,

/s/ Damario Solomon-Simmons
Damario Solomon-Simmons, OBA #20340
Kymberli J. M. Heckenkemper, OBA # 33524
RIGGS, ABNEY, NEAL, TURPEN
  ORBISON & LEWIS
Frisco Building
502 West Sixth Street
Tulsa, Oklahoma 74119-1010
Telephone: (918) 587-3161
Facsimile: (918) 587-9708
dsimmons@riggsabney.com
kheckenkemper@riggsabney.com

-and-

Melvin C. Hall, OBA No. 3728
528 NW 12th Street
Oklahoma City, Oklahoma 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
mhall@riggsabney.com

*Attorneys for Plaintiff*

14

**Exhibit 2**